UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

Tommy Williams,

        Petitioner,
                                  Case No. 1:20-cv-720

v.
                                  Honorable Paul L. Maloney

Gregory Skipper,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Tommy Williams is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. On October 24, 2018, following a two-day jury trial in the Genesee County Circuit Court, Petitioner was convicted of seven counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On November 26, 2018, the court sentenced Petitioner to concurrent prison terms of 23 years, 9 months to 50 years.

On July 28, 2020, Petitioner filed his habeas corpus petition. It is difficult to discern exactly what issues Petitioner is raising by way of his petition. The issues he touches upon in his petition and supporting materials include:

    I.     Petitioner's counsel failed to get the witnesses Petitioner wanted to have testify at the trial.

    II.    The prosecutor engaged in prosecutorial misconduct by posing argumentative questions to Petitioner when he took the stand.

    III.   There are inconsistencies in the evidence presented regarding the victim's age at the time of the alleged assaults.

IV. The prosecutor's case was supported by only the DNA evidence and the testimony of the victim.

(Pet., ECF No. 1, PageID.6; Pet'r's Br., ECF No. 1-1, PageID.18–19.) Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because, other than the prosecutorial misconduct claim, Petitioner has failed to exhaust his state court remedies and, with regard to the prosecutorial misconduct claim, it is meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

**I. Factual allegations**

In his brief on appeal to the Michigan Court of Appeals, Petitioner summarized the facts relating to his prosecution as follows:

> In this case, [Petitioner's] daughter . . . alleged that her father . . . impregnated her when she was 11 years old. Results from a DNA analysis supported that allegation[]. Additionally [the victim] testified to other sexual acts. [Petitioner] was charged with 7 counts of first-degree criminal sexual conduct and convicted as charged after a jury trial.

(Pet'r's Appeal Br., ECF No. 10-14, PageID.637.)

In that brief Petitioner described the testimony of the victim as follows:

> [The victim] testified that her parents were Tracy Ruff and Tommy Williams. She didn't live with Tommy Williams until she was 11. She said she had a terrible childhood. Her mother was a drug addict and would disappear 2 or 3 days at a time. Mr. Williams was frequently out of the state. (TR 1 at 210–212). She would go back and forth between them.
>
> Eventually she started going to school close to Mr. Williams' house and eventually stayed with him exclusively. She was 10 years old at the time. She testified that Mr. Williams started molesting her when they lived on Thackery. He told her that he heard she was being bad or "whoorish." (TR 1 at 214). He told her that he was going to take her to her aunts so that she could examine her to check if she ever had sex. After they started walking towards her aunt's house they turned around and

2

went home. She testified that Mr. Williams checked her himself. He made her take off her clothes, spread her legs and he touched her vagina. She stated that this occurred around seven times. She said that the second time he began putting his penis in her. (TR 1 at 216). She was 11 years old at the time. She thought it occurred once a week, but she wasn't sure. He said that he also made her perform oral sex twice.

He told her that he would kill her whenever she cried, or that he would kill somebody in her family. She said she believed him and that he had a reputation for violence.

She became pregnant when she was 11. She testified that on July 3 or 4 she and Mr. Williams were leaving his girlfriend's house. As they were walking through the basketball court in the park, he bent her over a rail and had intercourse with her. (TR 1 at 221). She never had intercourse with anybody else.

(*Id*., PageID.637–638.)

Petitioner testified. During his testimony, he responded to assertions made by a police officer regarding Petitioner's admissions during an interview. (*Id*., PageID.639–640.) The police officer testified that Petitioner admitted that he slept in a bed with the victim and that he might have rolled over and mistakenly thought that that the victim was his fiancé. Petitioner denied making that statement during the police interview. He denied sleeping in the same bed as the victim. And he denied walking through a park with the victim as she had described.

On cross-examination, the prosecutor showed Petitioner the transcript of the police interview. Petitioner contended that the transcript was not accurate and asked the prosecutor to play the video. The prosecutor responded:

> So the video and the transcript are untrue just like you having sex with your daughter is untrue, just like you having your daughter pregnant and having a baby is untrue.

(*Id*., PageID.640.) That exchange forms the basis for Petitioner's claim of prosecutorial misconduct.

An expert in DNA analysis testified that, in the African-American population, it was "seven hundred eighty billion times more likely that [Petitioner] was the biological parent of [the victim's

child] than a randomly selected individual." (*Id*.) The jury apparently credited the testimony of the victim and the DNA expert. After about twenty minutes of deliberation, the jurors found Petitioner guilty of all counts as charged. About one month later, the Court sentenced Petitioner as described above.

Petitioner, with the assistance of counsel, sought leave to appeal[1] in the Michigan Court of Appeals raising one issue: the prosecutorial misconduct issue raised as habeas ground II. By order entered August 30, 2019, the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented." (Mich. Ct. App. Order, 10-14, PageID.630.)

Petitioner filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (Pet'r's Appl. for Leave to Appeal, ECF No. 10-15, PageID.1055–1061.) The application raised the single issue Petitioner had raised in the court of appeals and, construed liberally, some new issues, including the issues Petitioner raises as habeas grounds I, III, and IV. By order entered March 3, 2020, the Michigan Supreme Court denied leave to appeal. (Mich. Order, ECF No. 10-15, PageID.1054.)

This timely petition followed. The petition is not a model of clarity. Petitioner used the Court's approved form; however, the only issue stated in the petition section that identifies habeas grounds is a rambling narrative that includes habeas grounds I and II. The Court has pulled the remaining habeas grounds from other sections of the petition and two pages of handwritten argument attached to the petition.

Respondent contends that Petitioner exhausted only one issue in the state courts—the prosecutorial misconduct claim relating to the argumentative question—and argues that Petitioner

---

[1] Petitioner sought the appointment of appellate counsel too late to appeal as of right. (Pet'r's Appeal Br., ECF No. 10-14, PageID.635.)

has not raised that issue in his habeas petition. Respondent claims that Petitioner has failed to exhaust his state court remedies with respect to the other issues touched upon in the habeas petition.

## II. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.  Exhaustion

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The district court can and must raise the exhaustion issue *sua sponte* when it

clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138–39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The pleadings Petitioner filed in the Michigan appellate courts suggest that he raised all of his issues in the Michigan Supreme Court; but he only raised the prosecutorial misconduct issue in both courts.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to exhaust habeas grounds I, III, and IV in the state courts prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition on the merits if *none* of the petitioner's claims has

any merit") (emphasis in original). As set forth fully below, none of Petitioner's claims has any merit; accordingly, the Court will consider, and deny relief on, Petitioner's unexhausted claims.

## IV. Prosecutorial misconduct (habeas ground II)

For Petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, he must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel, and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

Petitioner accurately describes the argumentative question posed by the prosecutor during Petitioner's cross-examination. The police officer testified that Petitioner, during his police interview, admitted sleeping in a bed with the victim. The prosecutor asked Petitioner about it during trial. (Trial Tr. II, ECF No. 10-12, PageID.571–572.) Petitioner denied that he said any such thing. (*Id*.) The prosecutor attempted to impeach Petitioner with the interview transcript. (*Id*.) Petitioner suggested the transcript was false and asked to see the video. (*Id*., PageID.572.) The prosecutor responded:

> So the video and the transcript are untrue just like you having sex with your daughter is untrue just like you having your daughter pregnant and having a baby is untrue?

(*Id*.) Petitioner's counsel objected—not about the argumentative nature of the question, but because the prosecutor had not permitted Petitioner to respond to the prior question:

> [Petitioner's counsel]: Judge, I'm going to object to this.
>
> THE WITNESS: That's right.
>
> [Petitioner's counsel]: He hasn't let him answer the first question.
>
> THE WITNESS: It's not true.
>
> [Prosecutor]: Okay.
>
> THE WITNESS: And like I said, play the video.
>
> BY [Prosecutor]:
>
> Q. This is all a set up?
>
> A. Play it.
>
> Q. Is that correct?
>
> A. That's what I (inaudible)
>
> Q. Thank you. That's all I need. I appreciate it.
>
> A. Play me the video. That's what I want to see and the CD.
>
> Q. I'm done, sir.
>
> A. I mean -
>
> Q. You're done, sir.
>
> A. Why you can't play the CD?

(*Id*., PageID.572–573.) Thereafter, Petitioner's counsel commenced his redirect examination of Petitioner and Petitioner again denied sleeping in the same bed as the victim. (*Id*., PageID.573.)

The Michigan Court of Appeals concluded that the prosecutorial misconduct claim based on the above exchange lacked merit. Petitioner has failed to demonstrate exactly how that

10

determination is contrary to, or an unreasonable application of, clearly established federal law. The overall proof of Petitioner's guilt of CSC-I was overwhelming. Indeed, the question regarding whether Petitioner had ever slept in the same bed as the victim was entirely peripheral to the determination of whether Petitioner had penetrated the victim as she claimed. She did not suggest that the penetrations occurred at a time that she and Petitioner were sleeping in the same bed. Instead, the "sleeping in the same bed" issue was raised by Petitioner as a speculative possibility for how the DNA tests might show that the child was his.

Counsel certainly objected to the question; but the objection did not address the argumentative nature of the question. It addressed the prosecutor's failure to permit Petitioner to answer the question. Petitioner's counsel's only apparent goal was to refute the claim that Petitioner and the victim slept in the same bed. That point was made successfully during direct examination, cross-examination, and redirect examination.

Moreover, the purportedly objectionable conduct was isolated and there was no risk the jury would be misled. Indeed, the jury heard the same sort of challenge to Petitioner's credibility a few moments later in the prosecutor's closing argument. Then, just moments after that, the trial court instructed the jury that neither the attorneys' arguments nor their questions were evidence. (Trial Tr. II, ECF No. 10-12, PageID.590.) That is exactly the "curative instruction" that would have been appropriate if Petitioner's counsel had objected to the question because it was argumentative.

Under *Darden* or *Donnelly* or any of the clearly established law cited above, the prosecutor's question challenging Petitioner's credibility did not rise to the level of prosecutorial misconduct. It certainly did not "infect[] the trial with unfairness." *Darden*, 477 U.S. at 181 (citation and internal quotes omitted). Because the court of appeals' resolution of this issue is

consistent with clearly established federal law, Petitioner is not entitled to habeas relief on this claim.

V.     **Counsel's failure to solicit testimony from witnesses at trial (habeas ground I)**

Petitioner next complains that counsel failed to secure witness testimony from the police officers that arrested Petitioner or the detective that supervised the case when the allegations first came to light 15 years before Petitioner's trial. (Pet., ECF No. 1, PageID.6.) Petitioner suggests that the matter was dropped then and surmises that it was dropped because of exculpatory information. He offers no support for that proposition.

Petitioner did not raise this issue in the Michigan Court of Appeals. This Court's review is, therefore, *de novo*.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

In this instance, even if counsel's failure to call the witnesses fell below an objective standard of reasonableness, Petitioner has failed to show the requisite prejudice. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what [the putative witness] would have said. Speculation cannot suffice to establish the requisite prejudice."). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VI. Inconsistencies regarding the victim's age (habeas ground III)

Petitioner notes that the victim's testimony includes some inconsistencies regarding her age at the time of the alleged assaults. Petitioner did not raise this issue on direct appeal. Therefore, this Court's review of the issue is *de novo*.

Certain facts regarding the timing of the events at issue during Petitioner criminal prosecution can be established by a careful review of the record. The child conceived during the alleged sexual assaults was born on April 1, 2004. (Trial Tr. I, ECF No. 10-11, PageID.499.) Petitioner impregnated the victim during July of 2003. (*Id.*, PageID.469.) Petitioner did not penetrate her after that incident. The victim was born during September of 1990. (*Id.*, PageID.462.) The victim was first penetrated by Petitioner during 2002, before her twelfth birthday. (*Id.*, PgeID.462–463.)

The key conclusion that can be derived from these facts is that all of the penetrations occurred before the victim was 13-years old. Thus the "inconsistencies" that confuse Petitioner

13

do not call into question the foundational claim that Petitioner penetrated his victim in every instance before she was 13-years old.

Based on these facts, it is apparent that the victim was 11-years old when Petitioner started regularly penetrating her. She was 12-years old when he impregnated her. She was 13-years old when the child was born. During the victim's testimony, however, in response to questions regarding how old she was when a particular event occurred, she would say "twelve going on thirteen" or "eleven going on twelve" when, instead, she was actually thirteen or twelve. (*Id.*, PageID.499.) The prosecutor and defense counsel asked questions attempting to clarify (*Id.*, PageID.499–500), but the victim's estimates of her age at the time of these events may well be off by a year. Petitioner uses the inconsistency to suggest that the underlying claims of sexual assault must be false.

Whether the victim was 12-years-old or 13-years-old when she says she was "twelve going on thirteen" or whether she was 11-years-old or 12-years-old when she says she was "eleven going on twelve," does not impact whether Petitioner was guilty of the charged crimes. Moreover, whether a pre-teen can fix an event to her age when the event occurred does not cast any meaningful doubt on her credibility. Accordingly, Petitioner's complaint regarding any inconsistencies in the victim's testimony regarding her age when he is alleged to have raped her does not entitle him to habeas relief.

## VII. The sufficiency of the victim's testimony and DNA evidence to convict Petitioner (habeas ground IV)

Finally, Petitioner suggests that the DNA testimony and the victim's testimony was not enough to warrant his convictions. (Pet., ECF No. 1-1, PageID.18) ("this was an extremely short trial[,] other than the DNA evidence, the additional counts were supported solely by [the victim's]

testimony . . . ."). Petitioner did not raise this issue on direct appeal to the Michigan Court of Appeals; accordingly, this Court's review is *de novo*.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction in the light most favorable to the prosecution with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

It is not clear whether Petitioner is attacking the sufficiency of the evidence of all seven counts of CSC-I or only six counts—excluding the count of penile/vaginal penetration that resulted in pregnancy which is corroborated by the DNA test results. Nonetheless, the evidence supporting all seven counts suffices to support Petitioner's convictions beyond a reasonable doubt, even if the Court looks only to the testimony of the victim. As the Sixth Circuit Court of Appeals has explained, "this Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction." *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008); *see also* Mich. Comp. Laws § 750.520h ("The testimony of a victim need not be corroborated in

prosecutions under sections 520b to 520g."). Petitioner's challenge to the sufficiency of the evidence is groundless. He is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason . . . could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, for the same reasons I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of a

16

denial of a constitutional right, I also conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court certify that an appeal would not be taken in good faith.


Dated: May 6, 2021                                          /s/ Sally J. Berens
                                                                                        SALLY J. BERENS
                                                                                        U.S. Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).